Smith *v.* Skeary.

———◆◈◆———

Mary Ann Smith, Administratrix, and another, *vs.* Timothy Skeary.

A corporation transferred a quantity of its goods to two of its directors, to be sold by them and the proceeds applied in payment of a joint claim of large amount which they had against it. The corporation was in fact insolvent, but it was supposed by the parties at the time that it was able to pay all its debts. The transaction was in good faith and with no intention to defraud creditors. Held that there was no principle of law that rendered the transaction fraudulent.

The obtaining a preference by one creditor of an insolvent debtor over another is not fraudulent at common law.

The two directors held, for another debt of the corporation, a mortgage of its warehouse, within which the goods were stored, the condition of the mortgage having been broken. The corporation delivered to them the goods as they were, and they at once, with consent of the corporation, took open possession of the warehouse under their mortgage and retained exclusive possession of the same and of the goods, selling portions of the latter as they had opportunity. Held that there was a sufficient delivery.

If a stockholder or director of a corporation deals with it in his individual capacity the law will protect him as well as any other party. His relation to the corporation only goes to the question of the good faith of the transaction.

Smith *v.* Skeary.

REPLEVIN for a quantity of goods; brought to the Superior Court in Middlesex County. The following facts were found by a committee:

On the 13th day of February, 1877, the defendant, by a writ of attachment in his favor against the Star Tool Company, a joint stock company, located in Middletown in this state, attached the goods described in the plaintiffs' writ as' the property of the company to secure a claim for work done for the company, and the goods were removed from the warehouse in which they were then stored in Middletown, and which was formerly owned and occupied by the company. The goods were held by virtue of this writ at the time they were replevied by the plaintiffs.

On the 15th day of December, 1876, a regular meeting of the directors of the company was held at Middletown, Julius Hotchkiss, one of the plaintiffs, being one of the directors, and then president, and acting as such at the meeting. William R. Smith (since deceased, and of whose estate the other plaintiff is administratrix,) was also one of the directors, as were also Charles A. Pelton and Elisha B. Nye, and all were present at the meeting. The whole number of directors at this time was nine, all of whom were duly notified to be present at the meeting, and all but one were present.

The company was indebted at this time to Hotchkiss and Smith for moneys before that time advanced in a sum exceeding $6,000, all which was then due, and for which they had no security.

The board of directors at the meeting passed a vote authorizing and directing Pelton as special agent of the company to execute and deliver to Hotchkiss and Smith a bill of sale of certain goods belonging to the company, including the goods described in the plaintiffs' writ, then estimated to be of the value of about $6,000, in payment of this claim; and Pelton, in pursuance of the vote, did then execute and deliver to them a bill of sale of the goods in the name of the company, they agreeing in writing that when the amount then due them, and any further amount which they should be obliged to furnish the company in the prosecution of its business, should be

Smith *v.* Skeary.

fully paid with lawful interest, all goods remaining over and above such indebtedness should be returned to the company. They also agreed that Nye should participate in the advantages of the bill of sale so far as the company's indebtedness to him might appear.

Hotchkiss did not vote at the meeting, and it did not appear whether Smith and Nye did or did not, but no one voted in the negative.

At this time the company did not have cash in hand sufficient to pay said indebtedness, and was in fact insolvent, although the parties supposed the company would be able to pay all its debts and liabilities.

All the parties acted in entire good faith in what was done, and had no intention of defrauding any of the creditors of the company, and there was no fraud unless the same arises as matter of law from the facts found.

Immediately after the execution and delivery of the bill of sale Hotchkiss and Smith, with the knowledge and consent of the company, openly, in the day time, took possession of the warehouse with other real estate, under a mortgage of the same which they held from the company, to secure them for other debts and liabilities of and on account of the company—the condition of the mortgage being then broken; and from that time to the time when the goods were attached continued to hold possession exclusively, and to have the exclusive charge and control of the warehouse and other goods contained therein, treating them as their own, and selling and disposing of portions of them from time to time, as they had opportunity. Hotchkiss acted with Smith till the death of the latter, which occurred in January, 1877, and with his administratrix afterwards.

There was no other change of possession or delivery of possession of the goods.

The company paid some of its debts after the 15th day of December, 1876, but did no business other than that.

The goods have all been disposed of, and for aught that appears to the best advantage, but not for enough to pay the indebtedness to Hotchkiss and Smith.

Smith *v.* Skeary.

Upon these facts the case was reserved for the advice of this court.

*S. A. Robinson*, for the plaintiffs.

1. The sale of the goods to Smith and Hotchkiss is not invalidated by the fact that the company was insolvent and that they were thereby obtaining a preference over other creditors. The company had a right to prefer its creditors. Lord Kenyon said of such a preference, "it is neither illegal nor immoral," and our courts approve this doctrine fully. *Catlin* v. *Eagle Bank*, 6 Conn., 241; *Kirtland* v. *Snow*, 20 id., 27; *Pondville Co.* v. *Clark*, 25 id., 101; *Bishop* v. *Brainerd*, 28 id., 300.

2. Fraud does not arise as a conclusion of law from the mere fact of the sale being to directors. *Barr* v. *Bartram & Fanton Mfg. Co.*, 41 Conn., 506; *Banks* v. *Judah*, 8 id., 157.

3. The change of possession is not impaired by the fact of the vendees being directors. Their possession of the warehouse gave them exclusive possession of the goods in it. *Toby* v. *Reed*, 9 Conn., 221. And their possession of the warehouse was not only actual, open and exclusive, but was also entirely legal. The legal title was vested in them as mortgagees and they had a right to take possession. 2 Swift Dig., 164, 169, 178; *Chamberlain* v. *Thompson*, 10 Conn., 251. And their possession can not be regarded in law as the possession of the company. If it were not so a mortgagee who happened to be a director of a corporation, could never take and hold possession under his mortgage for condition broken. The directors are not the company. Their admissions are not the admissions of the company, nor their acts the acts of the company. *Hartford Bank* v. *Hart*, 3 Day, 494; *Fairfield County Turnpike Co.* v. *Thorp*, 13 Conn., 181.

*J. R. Buck* and *W. T. Elmer*, for the defendant.

The transfer of the property of the Star Tool Company by its directors, December 15th, 1876, in the manner disclosed by the record, was a fraud in law, and the title to the property was not affected by the transaction; as between said company and its then existing creditors.

1. The company was insolvent and the transfer operated so as to prefer certain creditors over others. The record finds that the company was, in fact, insolvent, and the constructive fraud is not relieved by the further finding that the directors supposed it would be able to pay its debts. The directors were bound to know the condition of the company, and what they might have supposed in relation to the future is no excuse for their action. They made a somewhat invidious distinction between Smith, Hotchkiss and Nye of the company, and those creditors who were outside, when they proposed to make over to them all the property of the company to secure their debt, and left the outside creditors to depend on their supposition as to their ability to pay in the future.

2. It is found that "the goods were removed by the defendant from the warehouse of the plaintiffs in which they were then (at the time of the attachment) stored, and formerly used and occupied by the company," and that "Hotchkiss and Smith took possession of the warehouse" at the time of the sale. These goods were not treated in any different manner after the sale from what they were before. They were under the control and in the possession of the directors, both before and after the sale. The defendant could have had no notice of what was going on, as the situation of affairs was not ostensibly changed. The same officers, at the time of this pretended sale, were managing the business and selling the manufactured goods in the same manner as before the pretended transfer among the directors, and thus the creditors were the more easily deceived. "It is not enough that there is an actual delivery and an actual change of possession as between the vendor and the vendee, so long as the property, without legal excuse, is so placed back into the same condition and the same apparent relation to the vendor that there is no such manifest and continued change of possession as would indicate to the world that there had been a change of title." *Norton* v. *Doolittle*, 32 Conn., 411; *Meade* v. *Smith*, 16 id., 361, 363; *Crouch* v. *Carrier*, id., 510.

3. Such a relation exists between each of the directors of a joint stock corporation and its creditors and stockholders as

forbids a transaction of this kind. These directors could not have made the conveyance had it not been for the office they held, and by taking advantage of the same they have benefited themselves at the expense of the defendant and other creditors. 3 Story Eq. Jur., § 333. The record shows that no votes were cast in the negative on the proposition to transfer. Hotchkiss, Smith and Nye were present, and by their presence sanctioned the proceeding by which their debts were paid, to the loss of other creditors. The relation which they held to the defendant made it their duty to protect him from just such a transaction as this. They should have voted in the negative on any proposition to prefer *any* creditor above another; to say nothing of the propriety of sitting by in silence when their own debt was being secured, at the expense of those whose interests they were required by their position to guard. The directors of a joint stock corporation are the agents of the stockholders. Justice Story says: "Agents are not permitted to become secret vendors or purchasers of property which they are authorized to buy or sell for their principals; or, by abusing their confidence, to acquire unreasonable gifts or advantages." 1 Story Eq. Jur., § 322. The fact which these directors were bound to disclose was the *insolvency of the company.* The creditors should have been informed of the financial condition of the company, and if *they* sanctioned the sale and transfer and took their chances as to future payment, the transaction would not have been tainted with fraud.

4. These directors acted both as buyers and sellers of the same property at the same time. Contracts made under such circumstances are void, both in law and equity. They sold the property as directors, to themselves as individuals. *Banks* v. *Judah*, 8 Conn., 145, 157; *Reed* v. *Warner*, 5 Paige, 650; *Hobday* v. *Peters*, 28 Beav., 349; *Lewis* v. *Hillman*, 3 H. L. Cas., 609; *Kimber* v. *Barber*, L. R., 8 Cha. App. Cas., 56; *Clute* v. *Barron*, 2 Mich., 192. The well established principle is, that one charged with the duty of protecting and caring for property as trustee, cannot deal with it and become the purchaser of it for his own advantage. And this principle is

Smith *v.* Skeary.

not confined to trustees only, but is universal, and applies to all persons having a duty to perform inconsistent with the character of purchaser. See 3 Wait's Actions & Defenses, 466, 467, and cases cited. "To justify a court in inferring that a deed was made with fraudulent intention when no fraud *in fact* is proved, two things at least must concur:— *first*, there must be creditors known to the parties who may, by the provisions of the deed, be delayed or hindered in the collection of their debts; and *second*, the necessary consequence of the deed must be to produce such delay or hindrance." 3 Wait's Actions & Defenses, 469. The record says that all the parties acted in entire good faith in what was done. "When the probable and ordinary consequences of a man's acts will be to benefit himself to the injury of another, his intentions to produce that result may be legitimately inferred." *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Mfg. Co.*, 37 Conn., 278.

5. The transfer was not accompanied by proper and lawful delivery, so that the vendees gained no legal possession as against attaching creditors. "The rule of law that the retention of possession of personal property by the vendor is conclusive evidence of a colorable sale, is a *rule of policy*, required for the prevention of fraud, and to be inflexibly maintained. *Webster* v. *Peck*, 31 Conn., 500; *Colt* v. *Ives*, id., 35; *Norton* v. *Doolittle*, 32 id., 410; *Kirtland* v. *Snow*, 20 id., 28.

CARPENTER, J. The plaintiff Hotchkiss, and Smith the intestate of the other plaintiff, were stockholders and directors of the Star Tool Company, a joint stock corporation. They were creditors to the corporation to an amount exceeding six thousand dollars, which was justly due and unsecured. On the 15th day of December, 1876, pursuant to a vote of the board of directors, there were transferred to them from the corporation in payment of their claim, personal property, including that embraced in the present suit, of the value of about six thousand dollars. The corporation was in fact insolvent, although it was supposed by the parties at the time

that it would be able to pay all its debts and liabilities.  The transaction was in entire good faith, with no intention to defraud creditors, and there was no fraud unless the same arises as matter of law from the facts found.

We are unable to discover any principle of law which renders the transaction fraudulent.  The corporation had a right, and it was its duty, to pay this debt.  These creditors had a perfect right to receive pay in money or goods, and the fact that they were stockholders and directors did not modify or abridge that right, so long as there was no actual fraudulent intent.  The fact, if it be a fact, that it operated to prefer these creditors, is not sufficient at common law to stamp it as fraudulent, for the common law favored the vigilant, and a creditor might lawfully obtain a preference.  It does not become fraudulent under our insolvent laws, because no proceedings in insolvency were instituted in due time, so that the case can not be brought within the operation of those laws.  The consideration was good and adequate, so that there is no badge of fraud in that respect.

It is next objected that the transaction was legally fraudulent, for the reason that the goods after the transfer were suffered to remain in the possession of the vendor, the corporation, as before.  Upon this point the finding is as follows:

"Immediately after the delivery of the bill of sale, Hotchkiss and Smith, with the knowledge and consent of the company, openly, in the day time, took possession of the warehouse, with other real estate, under and by virtue of a mortgage of the same which they held from the company, to secure them for other debts and liabilities from and on account of the company, (the condition of the mortgage being then broken,) and from thence to the time when the goods were attached, continued to hold possession exclusively, and to have the exclusive charge and control of the warehouse and the goods contained therein, treating them as their own, and selling and disposing of portions of the goods from time to time as they had opportunity.  Hotchkiss was with Smith till the death of the latter, which occurred some time in January, 1877, and with his administratrix afterwards.  No other

change of possession or delivery of possession of the goods than what is herein stated and found, was made by the company."

From this finding it seems to us that there was a real and substantial change of possession. The plaintiffs had a good title to the real estate, including the warehouse, and took possession as owners. The title to the goods was transferred to them, and they took and retained the open and visible possession of them. The goods were cared for and some of them sold by the plaintiffs and not by the corporation. There is no evidence that the corporation or its agents had any control of the goods, and the finding leaves no ground for an inference that the transaction was colorable, and that it was intended that the real possession should remain in the company.

The only fact in the case on which the defendant relies in support of this claim is the circumstance that the goods remained in the warehouse where they were kept when owned by the company; in other words, the change was effected, not by removing the goods, but by changing the occupancy of the warehouse and the custodians of the goods. It will hardly be claimed that a change of that nature may not answer the demands of the law. If such a claim could be successfully made sales of business establishments and changes in business would be rendered difficult and dangerous.

It is true that in this case there is the additional circumstance that the sale was made to parties who were previously interested in the corporation; but that fact is of no importance unless it should further appear that they had something to do with the management of the property before as well as after the sale; and that is not found. If stockholders and directors may deal with the corporation in their individual capacity, the law will protect them as well as other parties. Their relation to the corporation however may be shown as bearing upon the question of good faith, and will be weighed with the other evidence, but will not as matter of law destroy what would otherwise be a valid legal change of possession.

The Superior Court is advised to render judgment for the plaintiffs.

In this opinion the other judges concurred.