HALLAM v. THE INDIANOLA HOTEL CO. ET AL.

1. **Corporation**: DIRECTOR: WHEN ALSO A CREDITOR. A director of a corporation may become its creditor, and take and enforce a mortgage on its property, but he is not thereby divested of his responsibility as a director, nor the duties which as such he owes to the corporation, and he is bound to act in the utmost good faith throughout the transaction.

2. ——: ——: ——. Facts considered upon which it was held that a sale of property of a corporation, under a mortage held by one of its directors, should be set aside.

*Appeal from Warren District Court.*

WEDNESDAY, JUNE 8.

THE defendant E. W. Perry and the defendant J. E. Lucas each obtained a decree of foreclosure of a real estate mortgage against the defendant, the Indianola Hotel Co., a corporation duly incorported under the laws of Iowa. An execution sale was made thereon, and the property was purchased by Perry for the amount of both decrees and interest and costs, and the property is now held by him for himself and Lucas. The plaintiff Hallam is a stockholder in the hotel company and he brings this action to set aside the sale, and the decrees, and the mortgages upon which the decrees were rendered. The alleged ground of the action is that the mortgages were invalid, and that the decrees were obtained by fraud, and that the purchase by Perry at the foreclosure sale should be set aside because Perry is one of the directors of the company. The court dismissed the plaintiff's petition and he appeals

*Cole & Cole* and *H. McNeil*, for appellant.

*Todhunter & Hartman*, for the company.

*Henderson & Berry*, for Perry.

*Seevers & Sampson*, for Lucas.

ADAMS, CH. J.—One of the mortgages is exceedingly in-formal, and neither appears to have been executed by the au-thority of the board of directors of the defendant company. If, therefore, the foreclosure of the mortgages had been resisted by the company it seems doubtful to us whether the decrees thereon could properly have been obtained. But having been obtained they constitute an adjudication, and are binding upon the company unless they were obtained by fraud. It appears to us also that if the company is bound by them all the stockholders are bound by them, including the plaintiff. His interest in the litigation was represented by the company, and he was not only not a necessary party, but not a proper party.

Coming to the question as to whether there was any fraud practiced in obtaining the decrees, we have to say that we think that there was not. The amount for which the decrees were rendered was due from the company, and had became payable. The complaint seems to be that these creditors combined with the officers of the company and were allowed to take decrees of foreclosure, whereas they should have granted an extension, or the company should have borrowed money and paid them off. The objection is not to the mode of foreclosure, so far as obtaining the decrees is concerned, but to the fact of foreclosure. But it is not for us to say that the creditors should have granted an extension, or that the company should have borrowed money and paid them and thereby prevented a foreclosure. If we should conclude that the affairs of the campany were very unwisely managed, and that the foreclosures might have been prevented, such conclusion would fall short of justifying us in holding that the decrees were obtained by fraud.

Nor do we think that the fact that Perry was a director of the company necessarily precluded him from making a valid purchase at the foreclosure sale. His right to become a creditor of the company by loaning it money cannot be questioned for a moment. It

1. CORPORA-TION : direct-or : when also a cred-itor.

was equally his right to take security and enforce it, and it seems to follow that he should be allowed for his just protection to bid at an execution sale of the property upon which he was secured. That a director of a corporation may bid at an execution sale made to pay a debt due the director from the corporation was expressly held in *Twin Lick Oil Company v. Morbury*, 91 U. S., 587.

While this is so it is not to be denied that a fiduciary relation exists, and a director cannot wholly divest himself of his responsibility to the company even in the very matter in which he has become an adversary. In *Twin Lick Oil Co. v. Morbury*, above cited, the court said "that a director of a joint stock corporation sustains one of those fiduciary relations where his dealings with the subject matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, are viewed with jealousy by the courts and may be set aside on slight grounds, and is a doctrine founded on the soundest morality, and has received the clearest recognition in this court and in others." Citing *Koehler v. Black River Falls Iron Co.*, 2 Black, 715; *Drury v. Cross*, 7 Wall., 299; *Luxemburg R. R. Co. v. Moguay*, 25 Beav., 586; *The Cumberland Co. v. Sherman*, 30 Barb., 553. While, therefore, it was held that the creditor director was at liberty to bid at the execution sale, yet it was said that the liberty should be exercised subject to the rules which belong to his peculiar position. Under the doctrine enunciated we are called upon to look into the acts of Perry with far greater scrutiny than we should be if he sustained no relation to the company other than that of creditor, and would be justified, we think, in setting aside the sale upon much slighter ground.

The defendant company was incorporated for the purpose of building a hotel. The indebtedness in question was incurred as a part of its cost. But it was a comparatively small part, amounting at the time of sale to but little more than $4,000, and in that sum was included considerable accrued interest. The cost of the hotel ap-

pears to have been about $19.000. By the execution sale in question the whole property has been exhausted to pay the comparatively small balance of cost of construction. The enterprise has certainly come to a very remarkable result.

Again, the evidence shows that the hotel was at the time of the execution sale rented at $900 a year. It also shows, we think, that it was worth not less than $10,000. That it was allowed to be sold upon execution and was not redeemed, nor the right of redemption sold, but a sheriff's deed allowed to issue, while not sufficient to establish fraud, is sufficient to excite suspicion and give some support to the claim strenuously insisted upon by the plaintiff, and of which we think there was some slight evidence at least, that there was a concert of action between Perry and the other officers of the company looking to the attainment of the result which has been reached. Now Perry was charged with the duty, as much as any other director was, of making a reasonabe effort to prevent this result. It follows that, our minds being affected with suspicion that such effort was not made, we cannot say that the sale to Perry ought to be allowed to stand. We think that the sale should be set aside and the case remanded; that an account should be taken of the rents and profits received by Perry and Lucas, if any; that the judgment in their favor should be reduced by whatever amounts they are properly chargeable with, less proper expenditures, and an execution issue for the balance and the property be resold.

REVERSED.