Johnson, J.
The plaintiffs, as stockholders in the Brooklyn *564 Street Eailroad Company, seek equitable relief against the action of its board of directors. They ask : 1. To enjoin the board from issuing to defendant Johnson certificates of stock for $8,250, subscribed and paid for, and to declare said contract of subscription void.
2. To enjoin the city of Cleveland from passing an ordinance granting to said company permission to use the track of the "West Side Street Eailroad to extend its line to the business center of the city.
3. To enjoin the directors from taking any steps, or instituting any proceedings to obtain the right to such use, or to make such extension.
Are the plaintiffs entitled to an injunction against the issue of this stock, and to have the contract of subscription therefor declared void ?
The authorized capital was $30,000, of which all had been subscribed and paid for except $8,250. Eepeated efforts had been made by the board to place this stock, but with little success. The books for the subscription of stock had been formally opened by the incorporators and most of the stock had been subscribed and paid for after the organization of the company, and while these books were in the possession and under the control of the directors. They had never been closed by any action of the board, or of the stockholders.
The financial condition of the company was such, that additional capital was necessary. The directors allowed defendant Johnson to subscribe and pay for this untaken stock, at its par value. It is not claimed that it was worth more than par. Indeed, from the allegations of the petition it was worth much less.
The consideration received was of the full value of said stock. The property and money received was necessary and, proper for the use of the company. In short, the transaction was bona fide and beneficial to the company. The contention is, that it was unauthorized, and therefore, that the contract was void. In this we do not concur.
This was not an increase of capital stock, beyond the amount authorized by the certificate of incorporation, hence the *565 numerous authorities cited as to the power of the board to increase the capital stock, or to dispose of increased capital, do not apply. This stock was part of the authorized capital, which each subscriber for stock and each holder of stock had expressly agreed should be taken at par, at an open public subscription. Each stockholder took his stock, knowing that others, to the full amount of the authorized capital, could be associated with him in the business of the company.
Before the organization the incorporators are authorized by statute, to open books, receive subscriptions and the first payment thereon, and give notice for the election of directors. They are empowered to place all the authorized capital. After the directors are elected and qualified, “the corporate powers, business and property,” of the corporation, “ must be exercised, conducted and controlled by the board of directors (Rev. Stafc. 3248). What power and control the stockholders, in their capacity as such, in a stockholders’ meeting duly held, may exercise over the business of the corporation, and over tbe board of directors, we need not determine, as, in the case a,t bar, they have taken no action.
The books for tbe subscription of stock were opened by the corporators. Neither stockholders or directors had ordered them closed. If the stockholders had the power to dispose of this unsubscribed stock, they never sought to exercise it.
In the absence of such action of the stockholders as would control the directors (if any such could be taken), the right to place the unsubscribed stock vested in the board of directors. They represented the corporation in all its business affairs, and were authorized to transact all the corporate business within the scope of its authority. In the exercise of these powers, the directors are at all times subject to the equity jurisdiction of the courts, on the application of a stockholder or a minority of stockholders, to restrain all breaches of trust, or the exercise of powers not delegated to them, to the 'injury of stockholders.
If, however, the directors, who are presumed to represent the will of the majority, act within the scope of their powers, their will must govern in the absence of fraud or breach of *566 trust. Dodge v. Woolsey, 18 How. U. S. 342 ; Ware v. Grand Junction Co., 2 Russ. & M. 470 ; Gifford, v. N. J. R. Co., 10 N. J. Eq. 171; Stevens v. Rutland & B. R. R. Co., 29 Vt. 545 ; Bissell v. M. S. & N. J. R. R. Co., 22 N. Y. 258; Kean v. Johnson, 1 Stock. Ch. 401; Field on Corporations, §§ 141, 142.
Applying these principles to the case before us, we hold : 1st. That the act of disposing of this stock at par, for a full and valuable consideration, zvas not in excess of the powers intrusted to the directors: and 2d. That the transaction being free from fraud and beneficial to the company, it was not such an abuse of the trust reposed in the board as warrants the •interference of the chancellor’.
The objection made, that Johnson was the president of the board, and that his associates could not dispose of this stock, is not well taken. The majority of the board, excluding Johnson, agreed to this contract. At most it was voidable, and not void. If in all respects fair and beneficial a court of of equity will not avoid it. It being within the scope of the powers vested in the directors, in the absence of any controlling action by the stockholders, the contract to dispose of this stock to a director or stockholder, if made in good faith, and if beneficial to the company, will not be set aside at the instance of a minority of stockholders. In such a case there is not such an abuse of corporate power, nor exercise of powers not granted, as will authorize the intervention of the chancellor. Smith v. Skeary, 47 Conn. 47.
II. As to the prayer for an injunction against the city of Cleveland.
All the city is asked to do, or proposes to do, is to grant permission to the Brooklyn Street Railroad Company the privilege of occupying certain streets, and to use the track of another street railroad company for its contemplated extension. The city does not propose, if it has the power, to invade or interfere with the private rights of the West Side Street Railroad Company to the exclusive use of its track. The permission to occupy the street and to use this track, is upon the express condition that the company acquire of the West Side Corn *567 pany by mutual consent or by appropriation, whatever property rights the "West Side Company have therein. The statute vests iu the city council the power to grant the use of the streets to any street railroad company, if beneficial to the public. A court of equity will not interfere with the exercise of this discretionary power in the absence of facts showing fraud or bad faith. State ex rel. v. Gas Co., 37 Ohio St. 45.
III. Should the company be restrained from taking any steps, or instituting any proceedings to acquire the right to extend its lines and use the track of the West Side Company for that purpose 2
If it can be lawfully done the finding of the court is, that it will be highly beneficial to the company. The right to the relief prayed for, depends, therefore, on the underlyingquestion, has the corporation the power to make the proposed extension % All questions of fraud, or of injury to the stockholders, are eliminated.
This corporation was incorporated and organized under the act of April 10, 1861 (58 Ohio L. 66), and acts amendatory and supplementary thereto. The certificate was dated August 25, 1869, and the organization was perfected by the election of directors October 5,1869.
Section 1 of the act of 1861 prescribes the minimum number of natural persons required to form a corporation, and describes the manner of executing the certificate, and states what it shall contain. It must specify, (1) “ The name assumed by such company ... (2) The name of the street, alley or avenue, with a description of the locality tihereon of each terminus of said road, and the names of the streets, alleys and avenues or other public grounds through which such road shall pass.”
Section 2, among other things, provides “ that- when the foregoing provisions have been complied with, . . . such corporations shall be authorized to construct, operate and maintain a street railroad ... on the streets, alleys or avenues . . . specified in the certificate . . . between the points of termini named in the certificate, and transport thereon passengers and their packages and baggage.”
Section 5 required the consent of the city council to be first *568 obtained before a street railroad could be commenced or constructed. This section was repealed by the act of May 27, 1866 (63 O. L. 55; S. & S. 137, 138), and sections 1 and 2 of the latter act were substituted. Section 1 of this act provided that no street railroad should be constructed or commenced until the consent of the council be obtained, and authorized the council to agree upon the terms and conditions upon which the street should be occupied.
Section 2 requires the council to prescribe by ordinance the terms and conditions upon which the streets and avenues of the city may be occupied by street railroads.
Up to this time, there was no authority vested in the city council to allow street railroad companies to extend their tracks beyond the limits named in their certificate of incorporation.
May 7, 1869, an act supplementary to the act of March 27, 1866, was passed, which in terms authorized such an extension (66 0. L. 140). It reads as follows: “It shall be lawful for the council of any city or incorporated village to grant permission by ordinance to any person or company, owning, or having the right to construct, any street railroad, to extend tliew track on any street or streets where, the said council shall deem such'extension beneficial to the public. And when any such extension shall be made, the charge for carrying passengers on any street railroad so extended, and its connections made with any other road or roads, by consolidation, under existing laws, shall hot be increased by such extension or consolidation.” This power of extension under this act was in addition to the power to consolidate under section 4 of the act of 1861. This right of extension was, by the act of April 10, 1867 (64 O. L. 122; S. & S. 138), so enlarged as to provide that thereafter any road constructed in a city or village, may be extended without the limits thereof, along the public roads, provided the proper authorities consent, &c.
The certificate of incorporation was taken out after the supplementary act of May 7, 1869, was in force. That act'was as much the law governing the corporation as the act of 1861. When this company became incorporated in August, 1869, *569 it was empowered, to exercise all tbe powers and enjoy tlie franchises granted by the act of 1861, and by the amendatory act of 18G6, and also by the act supplementary thereto, of 1869. The franchises granted by this supplementary act are as much a part of its chartered powers and privileges as those embraced in the original act. Its language is unmistakable. It shall be lawful for the council to grant permission by ordinance, “ to any person or company owning or having the right to construct any street railroad, to extend their track,” &c.
Section 5 of the act of 1861, and sections 1 and 2, of the act of 1866, did not authorize the council to permit an extension, but only to permit the use of its streets. As sections 1 and 2 of the act of 1861 limited the operations of the company to the termini named in the charter, so the permission granted to use the streets of the town or city, was by necessary implication limited to the same streets prior to the supplementary act of 1869. Sections 1 and 2 of the act of 1866 did not confer corporate power, but only authorized the council to grant permission to exercise the corporate powers conferred by sections 1 and 2 of the act of 1861, to wit, the right, with such permission, “ to construct, operate and maintain a street railroad, .... between the points of termini named in the certificate.”
The powers and franchises acquired by a certificate of incorporation in August, 1889, embraced not only those conferred by the acts of 1861 and 1866, but the additional franchise, if the corporation owned or had acquired the right to construct a street railroad, of extending its track, subject to the provisions of sections 4 and 5 of the act of 1866.
It is contended that this supplementary act of 1869 is to be construed as authorizing such permission within the termini named in the certificate, and as limiting the corporation to the streets named in its certificate. This view is untenable. Sections 1 and 2 of the act of 1866 authorized permission in such cases. The supplementary act of 1869 was unnecessary for that purpose, and in that view a work of supererogation. To give it any force or effect we must regard it as giving to such corporations, with the permission of the proper authorities, the right to extend “ their track,” beyond the termini named in *570 the certificate of incorporation, if the company already owns a road or has acquired the right to construct one.
It follows, that such an extension is no violation of the contract with stockholders, as among its powers and franchises to which they agreed is that of extending its track. Sprague v. I. R. R. Co., 19 Ill. 174.
Again, it is said the act of 1869, so construed, is in violation of art. 13, § 1, of the constitution. “ The general assembly shall pass no special act conferring corporate power.” It is said that, if the legislature cannot by special act confer corporate powers, it cannot vest in city councils the power by ordinance to do the same thing.
The vice of this argument is the assumption that an ordinance granting permission for such an extension, confers corporate powers. It only permits the exercise of such powers as are conferred by the statute. If such an ordinance confers corporate powers, then also does a like ordinance under sections 1 and 2 of the act of 1866, which provide that no sti’eet raih’oad shall be constructed in any street, withoxit permission first being granted.
Neither statute authorizes the city council to confer corporate power. They vest in the city the right to grant or refuse to street railroad corporations permission to construct or extend their tracks, under the corporate power acquix-ed by their certificate of incorporation. For obvious reasoxxs we have confined this discussion to the acts under which this company wras incorporated. It is now governed by the provisions of the Revised Statutes. These will be found in sections 2601 to 2506, and sections 3437 to 3443.
So far as the questions involved in this case are concerned, these provisions are in substance and legal effect the same as the original acts.
~We conclude, that the Brooklyn Street Railroad Company, being the owner of a sti’eet railroad, has the corporate power to extend its track, with the permission of the city coxxxrcil. As the exercise of this power1, if it can be legally done as contemplated, will be highly beneficial to the corporation, there is *571 no ground for the interference of a court of equity at the instance of stockholders.
It is said, that one street railroad corporation cannot condemn a right to use in common the track of another like corporation. This question is not properly before ns. It can only arise when the parties fail to agree and when proceedings are instituted for that purpose. It will then be a question between the two corporations. If such right does exist, the plaintiffs cannot complain, as the court finds its exercise will be highly beneficial to them. If it does not exist, the West Side Street Railroad Company can have ample protection, without the aid of the plaintiffs.

Judgment accordingly.