# Richmond.

## PLANTERS BANK OF FARMVILLE V. WHITTLE AND ALS.

### April 24th, 1884.

.1 CORPORATIONS—*Directors—Assets—Creditors.*—Directors are bound to discharge their duties prudently, diligently, and faithfully, and apply the assets, in case of insolvency, for the benefit of creditors in preference to stockholders and other persons.

2. IDEM—*Idem—Not trustees.*—But they are not technically trustees nor bound to apply the assets ratably among the general creditors.

3. IDEM—*Idem—Preferences—Bona fides.*—They may not only make preferences between creditors, but such preferences may be made in their own favor if they be creditors. But in such cases they must act with the utmost good faith.

4. IDEM—*Idem—Interested voters.*—Objection that assignments of assets made by the directors to pay debts for which they are individually bound, are void, under Code 1873, ch. 57, § 18, which provides that "No member of the board shall vote on a question in which he is interested, otherwise than as a stockholder," must be made in the court below, and cannot be raised for the first time in the appellate court.

5. IDEM—*Idem—Assignments in payment of debts—Liens.*—Code 1873, ch. 57, § 63, providing that liens or encumbrances giving preferences to creditors, except to secure debts contracted or money borrowed at the time of creating the lien or encumbrance, shall enure to the benefit ratably of all the creditors of the company existing at the time, does not prohibit the assignment of assets at their face value in discharge of the company's indebtedness, no lien being thereby created.

6. IDEM—*Practice in chancery—Receiver—Injunction.*—Until the appointment of a receiver and the award of the injunction, the management of the affairs of the company remains in the hands of the directors, and assignments by them in payment of the company's debts may be lawfully made.

Appeal of Planters Bank of Farmville from decree of circuit court of Prince Edward county, rendered 5th

September, 1882, in a chancery suit therein pending under style of " *Whittle for, &c.* v. *The Farmville Insurance and Banking Company.*"

The material facts are briefly these : Some time in the year 1875 the Planters Bank of Farmville discounted for the Farmville Insurance and Banking Company a negotiable note drawn by the latter for $10,000. As security for the payment of the note, the company deposited with the bank one hundred shares of the capital stock of the bank, ten shares of the capital stock of the Commercial Bank, five bonds of the Chesapeake and Ohio Railroad Company, and a bond of T. T. Tredway for $20,000, secured by deed of trust on real estate. Subsequently, in the year 1877, the bank discounted for the company four negotiable notes, upon all of which one or more of the directors of the company were accommodation endorsers—the company agreeing when the endorsements were made to indemnify the endorsers. These notes, except the first, were from time to time renewed, and on the 22d day of February, 1879, the indebtedness of the company to the bank on account of the notes was ascertained to amount to $23,529.52. To satisfy this indebtedness it was agreed that the company should assign to the bank certain bonds, which were part of its assets ; and accordingly bonds to that amount, pursuant to an order of the directors, were assigned to the bank on the 1st day of March, 1879. At the time these assignments were made two suits had been instituted in the circuit court of Prince Edward county—one in the name of *R. T. and P. A. Hubard* v. *The Farmville Insurance and Banking Company*, the other in the name of *Whittle and others* v. *the same*—for the appointment of a receiver, and notice had been given of a proposed motion to be made on the 7th day of March for an injunction.

The motion was heard, and on the 13th day of March a receiver was appointed and an injunction awarded. Some-

time in the year 1880, nearly two years after the commencement of the Whittle suit (which was begun on the 7th day of February, 1879), an amended and supplemental bill was filed in that suit, to which the bank and its officers were made defendants.

It was charged in the bill that the assignments by the company to the bank were fraudulent, illegal, and void; and the prayer of the bill was that the bank be required to surrender to the receiver the bonds which had come into its possession by reason of the said pretended assignments.

The defendants answered, denying the charge of fraud, and insisting that the assignments were legal and valid.

Testimony was taken, and the cause coming on to be heard, a decree was entered in accordance with the prayer of the bill, and from that decree the bank has appealed.

*Irving & McKinney, Guy & Gilliam, Wm. W. Henry,* for the appellants.

*Edgar Allan, R. M. Dickenson, John H. Dinneen,* for the appellees.

Lewis, P., delivered the opinion of the court.

After stating the facts in the foregoing language, he continued:

There is no proof of actual fraud in the transactions involved, but the appellees insist that the assets of an insolvent corporation are a trust fund for the payment of its debts; that the directors are trustees for the creditors, whose duty it is to apply the assets ratably for the benefit of the general creditors, and that therefore they can make no lawful preferences in favor of themselves, or in favor of those creditors for whose claims they are individually responsible.

That the directors of a corporation are bound to act in discharge of their duties with prudence, vigilance and fidelity, and to apply its assets, in the event of insolvency, for the benefit of the creditors in preference to the claims of stockholders or other persons, is a proposition which is not, and cannot be, disputed. But that they are technically trustees for the creditors, and bound to apply the assets ratably among the general creditors, is a proposition which has never been judicially affirmed in this State, and is in conflict with the great weight of authority elsewhere. Much stress is laid by the appellees on the case of *Sawyer* v. *Hoag*, 17 Wall. 610. In that case the well established principle was asserted that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors, which cannot be withdrawn from their reach by any act or device on the part of the directors. But no such doctrine as is here contended for was there laid down. On the contrary, the court recognized a distinction between the capital stock of a corporation and its ordinary assets with which, it was said, the directors may deal as they choose.

It is not only settled that the directors may make preferences between creditors, but such preferences may be made in their own favor when they themselves are creditors of the corporation. Of course in such cases they must act with the utmost good faith, and the transactions to be upheld must be free from the taint of fraud or suspicion. This was distinctly held in the well considered case of *Buell* v. *Buckingham & Co.*, 16 Iowa, 284. There the controversy was between a judgment creditor of an insolvent corporation and one of its directors. An execution in favor of the former was levied on certain property which the latter claimed by purchase in discharge of a debt due him by the company. The property was sold and conveyed to him pursuant to an order made by the directors, at a meeting

at which he was present and voted, his presence being necessary to make a quorum for business. The transaction was assailed by the judgment creditor as illegal and void, but it was held to be valid. Judge Dillon, in his opinion, said: "Being an officer in the corporation did not deprive him (the purchaser) of the right to enter into competition with other creditors, and run a race of diligence with them, availing himself in the contest of his superior knowledge, and of the advantages of his position, to obtain security for or payment of his debt. He has an advantage, it is true, but it is one which results from his position, and which is known to every person who deals with and extends credit to a corporation. This is one of the causes which has operated to bring corporate companies into discredit, and may constitute a good legislative reason for giving priority to outside creditors, but the legislature must furnish the remedy."

The same doctrine was laid down in *Whitwell* v. *Warner*, 20 Vt. 425, when a preference by a corporation in favor of one of its stockholders was upheld against the claims of creditors. The court said: "As to constructive fraud, it is not competent certainly to predicate this of the mere fact of a stockholder's availing himself of his superior advantages to obtain security for debts due to himself, to the exclusion of other creditors. The stockholder and the stranger, who are both creditors of the corporation, no doubt stand in very unequal positions. But it is an inequality which the law allows, and which is understood by those who contract with corporations."

In *Gordon* v. *Preston*, 1 Watts, 385, a mortgage by a corporation was held good which was assailed by creditors, on the ground, among others, that it was in favor of the president and treasurer of the company, and who were present at the meeting of the directors when the mortgage was authorized and executed. Ch. J. Gibson delivered the

opinion of the court   He said : "That a corporation may sustain the relation of debtor or creditor in regard to the corporation, and in the latter receive a security, is a proposition which requires not the aid of an argument, and here the existence of a meritorious debt is not disputed."

In *Ashhurst Appeal*, 60 Penn. St. 290, Judge Strong, for the court, said : "There must be many things which directors can do for their individual benefit which are binding upon a corporation of which they are directors. If they have advanced money, I cannot doubt they may pay themselves with corporate funds.  If they have become liable as sureties for the corporation, they may provide for their indemnity.  And though ordinarily the law frowns upon contracts made by them in their representative character with themselves as private persons, such contracts are not necessarily void; they are carefully watched, and their fairness must be shown."

In the *Railroad Co.* v. *Claghorn*, 1 Spear's Eq. 545, the directors of a corporation who had endorsed certain notes for the company voted a mortgage on its property for their indemnity, which was held to be valid.  The court said : "There is nothing either in law or equity which forbids a member, or even a director, of a corporation from contracting with it, and, like any other individual, he has a right to prescribe his own terms, which the corporation are at liberty to accept or reject, and when the contract is concluded, he stands in the same relation to the other creditors of the corporation as any other individual would under the same circumstances.  When the question of priority arises, it must depend on the *bona fides* of the transaction, fraud or no fraud.  And if by greater diligence, and without fraud, he has fairly gained an advantage over the other creditors, he is entitled to retain it."  See also *Smith* v. *Skeary*, 47 Conn. 47 ; *Catlin* v. *The Bank*, 6 Id. 233 ; *Sargent* v *Webster*, 13 Metc. 497 ; Field on Corporations, § 177.

But the appellees further insist that the assignments in question, having been made by order of the directors, are void under the provisions of the statute, Code 1873, ch. 57, § 18, which forbid a director to vote on any question in which he is personally interested otherwise than as a stockholder. In respect to this objection, it is sufficient to say that no such question was raised by the pleadings or otherwise in the court below. If it be true, as a matter of fact, that the order was passed by the votes of directors who were endorsers on the company's notes, and disqualified to vote, the fact, if intended to be relied on, should have been charged in the bill, and an opportunity afforded the defendants to controvert it, if they saw fit to do so. And no such charge having been made, it is now too late to raise the issue here.

Nor is the contention of the appellees well founded that if the assignments are not void, then they enure to the benefit ratably of all the creditors of the company whose debts were in existence at the time the assignments were made. This contention is based upon the statute which provides that if any such company "shall create any lien or encumbrance on its works or property, for the purpose of giving a preference to one or more creditors of the company over any other creditor or creditors, except to secure a debt contracted or money borrowed at the time of the creation of the lien or encumbrance, the same shall enure to the benefit ratably of all the creditors of the company" existing at the time. Code 1873, ch. 57, § 63. Here no lien was created, but certain bonds of the company were assigned at their face value in discharge of the indebtedness, and not as security for the indebtedness of the company to the bank. The bonds thereupon became the property of the bank, and the notes and collaterals of the company were in consideration thereof surrendered.

It only remains to say that until the appointment of a

receiver and the awarding of the injunction, the management of the affairs of the company remained in the hands of the directors, and by whose order, therefore, the assignments to the bank were lawfully made.

This disposes of all the questions arising in the case, and the result is that the decree must be reversed and the amended bill dismissed.

DECREE REVERSED.