## GOULD v. LITTLE ROCK, M. R. & T. RY. Co. *et al.*

### *(Circuit Court, E. D. Arkansas. October 28, 1892.)*

### No. 951.

1. CORPORATIONS—INSOLVENCY—PREFERENCE OF CREDITORS.
   Under the decisions of Arkansas and at common law, an insolvent corporation may make preferences among its creditors in good faith, so long as its right to do so is not restrained by statute. *Ex parte Conway*, 4 Ark. 302, and *Ringo* v. *Biscoe*, 13 Ark. 563, followed. *Rouse* v. *Bank*, 22 N. E. Rep. 293, 46 Ohio St. 493, questioned.

2. SAME—LOANS BY DIRECTORS.
   Advances made in good faith by certain directors of a railroad, and used for legitimate corporate purposes, their inducement being to protect and give value to their own large interests as creditors and stockholders, but all other stockholders and creditors being equally protected thereby, constitute a valid debt, enforceable by suit; and a deed of trust on certain lands thereafter executed by the direction of the stockholders and board of directors to secure it is as valid as if given to any other creditors.

3. SAME—DIRECTORS AS TRUSTEES.
   Treating the directors as trustees, the payment of the debt is an essential prerequisite to the avoidance of the deed of trust given to secure it, whether the debt was a present or precedent one.

In Equity.   Bill by Jay Gould against the Little Rock, Mississippi River & Texas Railway Company and Henry Wood, as trustees, to foreclose a deed of trust on certain lands.   On her own motion, Sallie Leverett, as administratrix of the estate of J. M. Leverett, deceased, was made a defendant, and filed an answer and cross bill.   Cross bill dismissed, and decree for complainant.

Statement by CALDWELL, Circuit Judge:

On the 25th day of April, 1884, the Little Rock, Mississippi River & Texas Railway Company, an Arkansas corporation, in pursuance of a resolution of its stockholders, and also of its board of directors, executed by its secretary, to Henry Wood, as trustee, a deed of trust in the nature of a mortgage on certain lands belonging to the company to secure the payment to Atkins, Winchester, Dexter, and Redfield the sum of about $425,000.   The money the deed of trust was given to secure was, from time to time, advanced by Atkins, Winchester, Dexter, and Redfield to the company for the construction and improvement of the railroad and the purchase of the necessary equipments, and to pay pressing debts, and was needed and used for these purposes.   At the time the money was advanced and the deed of trust executed, Atkins was president of the company, and Dexter and Winchester were stockholders and directors in the company, and Redfield was a stockholder and a director part of the time, but was not a director when the deed was executed.   They were all large holders of the stock and bonds of the company, and in control of the road and its affairs.   There is nothing in the record to show what number of persons constituted the board of directors.   The statute of the state regulating the organization of railroad companies provides that the board shall consist of not less than 5 nor more than 13, and counsel for interveners state in their brief that there were 8 directors. At the time the money was advanced the company owned its line of road and the rolling stock used in operating the same, and other property, but there were mortgages on this property, to secure bonds issued by the company, equal to or exceeding its value.   The credit of the company was not good.   It had no means of raising money to meet pressing demands and make necessary improvements, except by selling its mortgage bonds at a ruinous sacrifice.   In this condition of affairs, the parties named loaned or advanced the money mentioned in the deed of trust to the company from time to time, as its necessities demanded, borrowing money themselves for this purpose.   The company could not have obtained the money from any other source, and those who advanced it were impelled to do so to protect and preserve the large interests they already had in the property.   As collateral security for the money advanced, the company pledged its first mortgage bonds to the amount in par value of $297,000, its second mortgage bonds to the amount in par value of $206,500, and 3,430 shares of the capital stock of the company.   It was known this security was inadequate at the time it was taken, but it was all the company had to offer; and afterwards, when the state made a grant of lands to the company, the deed of trust in suit was executed thereon as additional security for these loans

or advances. At the date of the execution of the deed of trust the floating debt of the company was inconsiderable, and the company continued to be a going concern, and to own its road, until it was sold in 1887, under a decree foreclosing the mortgage given to secure its first mortgage bonds.

Some time before this sale of the road, the mortgagees mentioned in the deed, for the consideration of $400,000, paid in cash, assigned and transferred the debt due them from the company and the deed of trust to secure the same, as well as the collateral securities which they held, to the present plaintiff. The purchase price of the road at the foreclosure sale was such that the holders of the first mortgage bonds received 56.52 cents on the dollar for the bonds, and the plaintiff received this percentage, amounting in the aggregate to $167,864.40 on the first mortgage bonds which he held as collateral security for the debt secured by the deed of trust in suit, and this is all that has ever been paid thereon. The second mortgage bonds and stock were rendered worthless by the foreclosure of the first mortgage. This bill was filed by the plaintiff against the company and the trustee named in the deed, to foreclose the same. The company and the trustee appeared, and confessed the bill. Upon her own motion, Sallie Leverett, as administratrix of the estate of J. M. Leverett, deceased, was made a defendant, and thereupon filed an answer and cross bill, alleging that on the 28th day of March, 1885, she recovered a judgment against the defendant company for $3,500 in the circuit court of Desha county, Ark., upon which executions were issued and levied upon the lands mentioned in plaintiff's deed of trust. She avers, among other things, that the deed is void, because, at the time of its execution, Atkins was president, and Winchester, Dexter, and Redfield, directors, of the company, and the principal holders of its stock and bonds, and the company insolvent. There was a replication to the answer, and an answer to the cross bill, which denied all its allegations.

*Dodge & Johnson,* for plaintiff.

*Sol F. Clark, Dan W. Jones, Thomas B. Martin,* and *Ratcliffe & Fletcher,* for defendant Leverett, contended that—

The deed of trust was void, because made to secure debts due to the directors of the company when it was insolvent, and cited *Lippincott* v. *Carriage Co.,* 25 Fed. Rep. 577, 586; *Howe, Brown & Co.* v. *Sanford Fork & Tool Co.,* 44 Fed. Rep. 231; *White, Potter & Paige Manuf'g Co.* v. *Henry B. Pettes Importing Co.,* 30 Fed. Rep. 864; *Adams* v. *Milling Co.,* 35 Fed. Rep. 433; *Haywood* v. *Lumber Co.,* 64 Wis. 639, 26 N. W. Rep. 184; *Rouse* v. *Bank,* 46 Ohio St. 493, 22 N. E. Rep. 293; *Consolidated Tank Line Co.* v. *Kansas City Varnish Co.,* 45 Fed. Rep. 7; *Gibson* v. *Furniture Co.,* (Ala.) 11 South. Rep. 365.

CALDWELL, Circuit Judge, (*after stating the facts.*) 1. It is the law of Arkansas, established by the decision of its supreme court 50 years ago, that a corporation of that state in failing circumstances may make preferences among its creditors by assigning all or a part of its property to preferred creditors, or to trustees for their benefit. Its right to prefer

one or more of its *bona fide* creditors to the exclusion of others, in the absence of a statute prohibiting it, is as unrestricted and absolute as is the common-law right of an individual debtor to make preferences among his creditors.    *Ex parte Conway*, 4 Ark. 302, 348, 354; *Ringo* v. *Biscoe*, 13 Ark. 563.    The established rule in that state is in harmony with the general, though not quite uniform, current of authorities in this country on the question.  2 Mor. Corp. § 802; *Allis* v. *Jones*, 45 Fed. Rep. 148; *Covert* v. *Rogers*, 38 Mich. 363; *Coats* v. *Donnell*, 94 N. Y. 168; *Dana* v. *Bank*, 5 Watts & S. 223; *Warner* v. *Mower*, 11 Vt. 390; *Whitwell* v. *Warner*, 20 Vt. 426; *Stratton* v. *Allen*, 16 N. J. Eq. 229; *Wilkinson* v. *Bauerle*, 41 N. J. Eq. 635, 7 Atl. Rep. 514; *Duncomb* v. *Railroad Co.*, 84 N. Y. 190, 88 N. Y. 1; *Harts* v. *Brown*, 77 Ill. 226; *Reichwald* v. *Hotel Co.*, 106 Ill. 439; *Buell* v. *Buckingham*, 16 Iowa, 284, (opinion by Judge DILLON;) *Hallam* v. *Hotel Co.*, 56 Iowa, 178, 9 N. W. Rep. 111; *Garrett* v. *Plow Co.*, 70 Iowa, 697, 29 N. W. Rep. 395; *Smith* v. *Skeary*, 47 Conn. 47; *Bank* v. *Whittle*, 78 Va. 737; *Ashhurst's Appeal*, 60 Pa. St. 314; *Sargent* v. *Webster*, 13 Metc. (Mass.) 497.

In some states, by statute, the property of an insolvent corporation must be devoted to the payment *pro rata* of all its creditors, and, after the insolvency of the corporation is known, the directors cannot divert its property from such use by giving preferences to some of its creditors; but where there is no such statute the great weight of authority is that the property of an insolvent corporation may be sold and used by its directors in the payment of some of its creditors to the exclusion of others. Its insolvency does not affect its right to make preferences any more than the right of an individual debtor to make preferences is affected by his insolvency.    The cases which hold the contrary doctrine are bottomed on the erroneous theory that the insolvency of a corporation, in effect, dissolves it, and makes the directors mere trustees to distribute its assets ratably among its creditors.    It is undoubtedly true that the property of a corporation is, in one sense, a trust fund for the payment of its debts; but this rule means no more than that the property of a corporation cannot be distributed among its stockholders, or applied to any purpose foreign to the legitimate business of the corporation, until its debts are paid.    The rule, so far as it relates to the payment of debts, is satisfied whenever the property of a corporation is applied to the payment of any of its *bona fide* debts.    The rule, as has been often pointed out, does not prevent a corporation, whether solvent or insolvent, from making preferences among its creditors, and exercising in good faith absolute dominion over its property in the conduct of its legitimate corporate business, so long as its right to do so is not restrained by statute or by judicial proceedings.

In *Fogg* v. *Blair*, 133 U. S. 534, 541, 10 Sup. Ct. Rep. 338, Mr. Justice FIELD, in delivering the opinion of the court, calls attention to the fact that the property of a corporation is not a trust fund for creditors in any other sense than we have stated.    He says:

"We do not question the general doctrine invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts,

but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders. It does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability to be appropriated to pay that indebtedness. Such a doctrine has no existence. The cases of *Curran* v. *State*, 15 How. 304, 307, and *Wood* v. *Dummer*, 3 Mason, 308, give no countenance to anything of the kind."

The case of *Rouse* v. *Bank*, 46 Ohio St. 493, 22 N. E. Rep. 293, is cited in support of the proposition that the property of an insolvent corporation is a trust fund for its creditors in a sense that precludes the corporation from making preferences among its creditors, or otherwise using its property in the conduct of its corporate business. Referring to the doctrine of this case, the supreme court of the United States, speaking by Mr. Justice GRAY, says:

"That decision, it is true, proceeded in part upon the theory that the property of an insolvent corporation is a trust fund for its creditors in a wider and more general sense than could be maintained upon general principles of equity jurisprudence. *Graham* v. *Railroad Co.*, 102 U. S. 148, 161; *Railway Co.* v. *Ham*, 114 U. S. 587, 594, 5 Sup. Ct. Rep. 1081; *Richardson's Ex'r* v. *Green*, 133 U. S. 30, 44, 10 Sup. Ct. Rep. 280; *Fogg* v. *Blair*, 133 U. S. 534, 541, 10 Sup. Ct. Rep. 338; *Peters* v. *Bain*, 133 U. S. 670, 691, 692, 10 Sup. Ct. Rep. 354." *Purifier Co.* v. *McGroarty*, 136 U. S. 237, 10 Sup. Ct. Rep. 1017.

A good many courts have from time to time inveighed against the rule of the common law which allows a debtor to make preferences among his creditors, but the rule is too firmly imbedded in our system of jurisprudence to be overthrown by judicial decision, and it can no more be overthrown by the courts in its application to corporations than to individuals. In *Wilkinson* v. *Bauerle*, 41 N. J. Eq. 635, 7 Atl. Rep. 514, the court said:

"Both reason and authority establish the proposition that a corporation may sell and transfer its property, and may prefer its creditors, although it is insolvent, unless such conduct is prohibited by law."

We think this is a correct statement of the rule, and that it can only be abrogated by legislation.

2. It is next contended that the deed of trust is void because it was executed to secure debts due to persons who were directors of the corporation, and large holders of its stock and mortgage bonds. The money was actually advanced by the directors in good faith for the benefit of the company, and was used by the company for legitimate corporate purposes. It was not loaned or advanced for the purpose of obtaining any advantage over the corporation or its other stockholders or creditors, but to conserve and protect the best interests of all persons interested in the property. It is obvious that the directors who made these advances did not do so from choice, or because they esteemed it a safe or profitable investment in itself. They made the advances because the corporation stood in pressing need of the money, and its failure to get it was

likely to result injuriously to all its creditors and stockholders. The inducement to make the loan was to protect and give value to their own large interests as creditors and stockholders of the corporation; but all other creditors and stockholders, in proportion to their interests, were equally protected and benefited by the loan.   Upon these facts, the deed of trust executed by the direction of the stockholders and board of directors to secure the advances previously made by these four directors to the company is a valid security.   The advances constituted a valid debt against the corporation, which it was legally liable to pay, and could have been compelled to pay by suit.   Where a corporation is legally liable to pay a debt, it may undoubtedly give security for its payment. The use of its property to pay or secure a *bona fide* debt is not an unlawful use or diversion of its property, no matter what official relation the creditor sustains to the corporation.   The corporation is under the same obligation to pay a *bona fide* debt due to one of its directors and stockholders that it is to pay a debt due to a stranger, and a security given for a debt due to a director and stockholder is as valid as a security given to any other creditor.   The doctrine established by the best-considered cases and by the decisions of the supreme court of the United States is that the mere fact that creditors of a corporation are directors and stockholders does not prevent their taking security to themselves as individuals to secure a *bona fide* loan of money previously made to such corporation, and used by it in conducting its legitimate corporate business.   Among the states maintaining this doctrine may be mentioned Vermont, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Virginia, Illinois, Minnesota, and Iowa.   The rule is thus stated in a recent case by the supreme court of Iowa:

"We understand that he [a director] may become a creditor of the corporation, may advance it money, or sell it property, and obligations of the corporation executed therefor may be enforced by him.   In this regard he occupies no different position from that of any other creditor; and, if the debt he holds was contracted in good faith, and there is an absence of fraud on his part, he may take security or payment, though the corporation be insolvent, and he may thereby acquire priority in the payment of his claim."   *Garrett* v. *Plow Co.*, 70 Iowa, 697, 29 N. W. Rep. 395.

The previous cases in that court to the same effect are: *Buell* v. *Buckingham,* 16 Iowa, 284; *Bank* v. *Wasson,* 48 Iowa, 336; *Hallam* v. *Hotel Co.*, 56 Iowa, 178, 9 N. W. Rep. 111.   In discussing the question, the supreme court of Connecticut say:

"These creditors had a perfect right to receive pay in money or goods, and the fact that they were stockholders and directors did not modify or abridge that right so long as there was no actual fraudulent intent.   The fact, if it be a fact, that it operated to prefer these creditors is not sufficient at common law to stamp it as fraudulent, for the common law favored the vigilant, and a creditor might rightfully obtain a preference."   *Smith* v. *Skeary,* 47 Conn. 47.

And to the same effect, see *Duncomb* v. *Railroad Co.*, 84 N. Y. 190, 88 N. Y. 1; *Harts* v. *Brown,* 77 Ill. 226; *Reichwald* v. *Hotel Co.*, 106 Ill. 439; *Stratton* v. *Allen,* 16 N. J. Eq. 229; *Wilkinson* v. *Bauerle,* 41 N. J.

Eq. 635, 7 Atl. Rep. 514; *Bank* v. *Whittle*, 78 Va. 737; *Ashhurst's Appeal*, 60 Pa. St. 314; *Whitwell* v. *Warner*, 20 Vt. 425; *Gordon* v. *Preston*, 1 Watts, 386; *Sargent* v. *Webster*, 13 Metc. (Mass.) 497; *Kitchen* v. *Railway Co.*, 69 Mo. 224; *Oil Co.* v. *Marbury*, 91 U. S. 587.

An exhaustive and luminous discussion of this question is found in the opinion of the supreme court of Minnesota, delivered by Judge MITCHELL, in the case of *Hospes* v. *Car Co.*, 50 N. W. Rep. 1117. The reasoning of the learned judge who delivered the opinion of the court in that case makes it extremely clear that an insolvent corporation may prefer its creditors, whether they be officers of the corporation, or strangers; and that there is no foundation for the doctrine that the insolvency of a corporation has the effect to convert its assets into a "trust fund," in the technical sense of that term, and its officers into mere trustees charged with the duty of distributing its assets ratably among its creditors.

The question has been before the supreme court of the United States in several cases. In the case of *Hotel Co.* v. *Wade*, 97 U. S. 13, the court said:

"His [circuit judge's] finding is that the bonds and mortgages were not void upon the ground that the lenders of the money were also the directors of the company; that the terms of the contract were sanctioned by the stockholders; and that the money loaned was needed to complete the building, and that it was applied to effect the purpose for which it was borrowed. * * * Examined in the light of the circumstances attending the transaction, as the case should be, the court is of the opinion that the finding fails to support the proposition that the bonds and mortgage were invalid because the directors became the holders of the bonds and advanced the money. Transactions of the kind have often occurred, and it has never been held that the arrangement was invalid where it appeared that the stockholders were properly consulted, and sanctioned what was done, either by their votes or silence."

In the case of *Richardson's Ex'r* v. *Green*, 133 U. S. 30, 43, 10 Sup. Ct. Rep. 280, the court said:

"Undoubtedly his relation as a director and officer or as a stockholder of the company does not preclude him from entering into contracts with it, making loans to it, and taking its bonds as collateral security; but courts of equity regard such personal transactions of a party in either of these positions, not perhaps with distrust, but with a large measure of watchful care; and, unless satisfied by proof that the transaction was entered into in good faith, with a view to the benefit of the company, as well as of its creditors, and not solely with a view to his own benefit, they refuse to lend their aid to its enforcement."

The attack upon the validity of the trust deed must fail upon another ground. Treating the directors as trustees, it is not open to the company or any of its creditors to avoid the security given in pursuance of the direction of the stockholders, as well as the directors, so long as the company retains the money which was loaned in good faith, and actually appropriated to legitimate corporate uses. The payment of the debt thus contracted is an essential prerequisite to the avoidance of the deed of trust given to secure its payment. "And," in the language of the court of appeals of New York, "this is true whether the pledge be taken for a present or precedent debt. In either case the equity to be

regarded equally exists." *Duncomb* v. *Railroad Co., supra.* Let a decree be entered foreclosing the deed of trust for the amount due on the debt therein mentioned, and dismissing the cross bill of Sallie Leverett for want of equity.